IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Civ. No. 09-00133 ACK-KSC |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KENNETH A. GUERETTE, JR., ET | ) |
| AL., | ) |
| | ) |
| Defendants. | ) |
| ─────────────────────────── | ) |
| | ) |
| SUSANNA LOUISA JONES-HART, | ) |
| | ) |
| Cross-claim Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KENNETH A. GUERETTE, JR., | ) |
| | ) |
| Cross-claim Defendant. | ) |
| ─────────────────────────── | ) |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
INTERLOCUTORY DECREE OF FORECLOSURE, AND DEFICIENCY JUDGMENT**

**BACKGROUND**

This foreclosure action is based on a mortgage executed
by Defendant Kenneth A. Guerette, Jr. ("Defendant Guerette") on
property located at 94-860 Lumiholoi Street, Waipahu, Hawai'i
96797, and having the Tax Map Key No. (1) 9-4-042-064-000
("Mortgaged Property").

**FACTUAL BACKGROUND**

**I.   The Government's Note and Mortgage**

On or about August 20, 1986, Defendant Guerette and his wife, Hilaria Mataro Guerette,[1] executed and delivered a mortgage note in favor of IMCO Realty Services, Inc., in the amount of $135,000.00, together with interest thereon at the rate of nine and one half percent (9.5%) per annum.  Plaintiff's MSJ Concise Statement of Facts ("Plaintiff's MSJ CSF") ¶ 1, Ex. A. To provide further security on the Note, Defendant Guerette and his wife executed a mortgage in favor of IMCO Realty Services, Inc., also dated August 20, 1986 ("Mortgage").  Id. ¶ 2, Ex. B. The Mortgage was recorded on August 22, 1986, in the Office of Assistant Registrar of the Land Court of the State of Hawai'i ("Land Court") as Document No. 1395046.  Id. ¶ 3, Ex. B.

The Mortgage was ultimately assigned to the Secretary of Veteran Affairs ("VA") through an assignment of mortgage, which was recorded on November 20, 1996, in the Land Court as Document No. 2348717.  Id. ¶ 5, Ex. C.

On or about May 12, 1997, Defendant Guerette entered into a mortgage modification agreement with the VA ("Mortgage Modification Agreement").  Id. ¶ 6, Ex. D.  The Mortgage Modification Agreement was recorded on May 21, 1997, in the Land Court as Document No. 2382087.  As part of the Mortgage

---

[1] Hilaria Mataro Guerette passed away on January 6, 2008. Because the obligations under the Note and Mortgage were undertaken jointly and severally, only Defendant Guerette is named in the foreclosure action.

Modification Agreement, Defendant Guerette agreed, _inter alia_, to keep and continue to perform all of the covenants and agreements in the Note and Mortgage and to make regular payments on the Note and Mortgage as reamortized by the Mortgage Modification Agreement. _Id._, Ex. D.  Under the Mortgage Modification Agreement, Defendant Guerette promised to pay the total principal amount of indebtedness at that time, $125,046.77, together with interest thereon at the rate of six percent (6%) per annum.  _Id._ The Mortgage Modification Agreement also stated that Defendant Guerette continued to be responsible for Plaintiff's reasonable attorney's fees and costs as a result of securing a deficiency judgment and proceeding with a foreclosure sale.  _Id._

On or about November 20, 2008, the VA sent Defendant Guerette a letter.  _Id._ ¶ 7, Ex. E.  In the letter to Defendant Guerette, the VA notified Defendant Guerette of his default and provided him with two alternatives in lieu of foreclosure.  _Id._ These options were (1) a private sale of the Mortgaged Property, and (2) conveying title of the Mortgaged Property to the VA in lieu of foreclosure.  _Id._  The letter informed Defendant Guerette that if default was not cured on or before December 15, 2008, the VA would foreclose upon the Mortgaged Property.  _Id._

Subsequently, Defendant Guerette failed to cure his default and the VA exercised its option under the terms and covenants of the Note, Mortgage, and Mortgage Modification

3

Agreement to declare the entire unpaid principal balance immediately due and payable, together with all lawful interest, fees, and other charges, and to foreclose on the Mortgaged Property.  See Memorandum accompanying Plaintiff's MSJ ("Plaintiff's MSJ Mem.") at 7; Plaintiff's MSJ CSF Exs. A, B, D.

As of the date of this Order, Defendant Guerette remains in default.  See Pl's Supp Br., Declaration of Sandra Luke ("7/30/10 Luke Aff.") ¶ 3.  Further, as of July 30, 2010, the principal amount due and owing on the Note and Mortgage was $101,611.15.  Id. ¶ 2; see also Plaintiff's MSJ CSF, Affidavit of Sandra Luke ("2/22/10 Luke Aff.") ¶ 9.  As of July 30, 2010, the Government asserts that the amounts due and owing on the Note and Mortgage were as follows:

| | |
|---|---|
| Principal Amount Due: | $101,611.15 |
| Interest to 08/31/2010: | $14,726.78 |
| Administrative Charges: | |
|   Late Charges | $118.11 |
|   Inspection Fees | $255.00 |
|   Escrow Negative Bal. Due | $7,846.12 |
| **TOTAL** | **$124,557.16** |

7/30/10 Luke Aff. ¶ 2.  The Court finds that the Government's calculation of interest through August 31, 2010, appears to be accurate.  Although, at the request of the Court, the Government has come forward with a slightly more detailed explanation of the administrative charges, the Government will still need to provide more detail regarding these charges, such as for which time periods the late fees are being assessed, to be entitled to

4

administrative charges.[2/]  The Court need not determine the exact
amount of interest and other charges owed at this point, however,
as these issues will be addressed at the hearing confirming the
sale of the property.

## II.   The Jones-Hart Note and Mortgage

On or about November 22, 1999, for value received,
Defendant Guerette made, executed, and delivered to Jones-Hart a
certain promissory note dated November 22, 1999 ("Jones-Hart
Note"), in the amount of $30,000.00, together with interest
thereon at the rate of seven percent (7%) per annum.  Defendant
Jones-Hart CSF ¶ 1, Ex. A.  The Jones-Hart Note is subject to the
terms, covenants, and provisions of a certain unrecorded real
estate access line agreement dated November 22, 1999 ("Jones-Hart

---

[2/] The Court observes, however, that the Mortgage states:

> Any deficiency in the amount of such aggregate
> monthly payment shall, unless made good by the
> Mortgagor prior to the due date of the next such
> payment, constitute an event of default under this
> mortgage.  At Mortgagee's option, Mortgagor will
> pay a "late charge" not exceeding four percentum
> (4%) of any installment when paid more than
> fifteen (15) days after the due date thereof to
> cover the extra expense involved in handling
> delinquent payments, but such "late charge" shall
> not be payable out of the proceeds of any sale
> made to satisfy the indebtedness secured hereby,
> unless such proceeds are sufficient to discharge
> the entire indebtedness and all proper costs and
> expenses secured thereby.

Plaintiff's CSF, Ex. B at 4 (emphasis added).

Line Agreement"), between Defendant Jones-Hart, as lender, and Defendant Guerette, as borrower.  Id. ¶ 2, Ex. B.

The Jones-Hart Note is secured by a certain real estate access line fixed-rate mortgage dated November 22, 1999 ("Jones-Hart Mortgage"), which was executed by Defendant Guerette, as mortgagor, and Defendant Jones-Hart, as mortgagee, and was recorded on December 30, 1999, in the Land Court as Document No. 2599150, and noted on Transfer Certificate Title No. 285,920. Id. ¶ 3, Ex. C.

The Jones-Hart Note and Line Agreement were revoked and superseded by an amended and restated promissory note dated March 3, 2008 ("Amended Jones-Hart Note").  Id. ¶ 4, Ex. D.  Under the Amended Jones-Hart Note, Defendant Guerette, as maker, promised to pay to the order of Defendant Jones-Hart, as payee, the principal sum of $37,906.24, together with interest thereon at the rate of seven percent (7%) per annum, compounded annually. Id.[3/]  The principal amount of the Amended Jones-Hart Note

---

[3/] The Amended Jones-Hart note provides that the seven percent (7%) per annum shall be compounded annually.  Amended Jones-Hart Note ¶ 2.  However, compounding interest rates in consumer credit transactions are prohibited under Hawai'i law. See H.R.S. § 478-7 ("No action shall be maintainable in any court of the State to recover compound interest upon any consumer credit transaction or upon any credit card agreement whatever."); see also H.R.S. § 478-1 (defining "consumer credit" to include "[s]uch credit [that] is secured by real property or by personal property used or expected to be used as the borrower's principal dwelling").  In her supplemental briefing, Defendant Jones-Hart asserts that "compound interest is allowed so long as it is in

(continued...)

consists of the original principal amount of the Jones-Hart Note of $30,000.00, plus accrued and unpaid interest of $7,906.24 on the original principal amount.  See id.  The Amended Jones-Hart Note continues to be secured by the Jones-Hart Mortgage.  Id.

The Amended Jones-Hart Note provides that Defendant Guerette will pay to Jones-Hart: (1) monthly payments of interest only beginning January 31, 2009; (2) payment of all outstanding principal and accrued, but unpaid interest, on or before December 31, 2012 (the maturity date); and (3) a late fee of five percent (5%) of any overdue scheduled payment.  See Amended Jones-Hart Note ¶¶ 4, 7.  The Amended Jones-Hart Note also contains a moratorium on payments until December 31, 2008, at which time all accrued but unpaid interest shall be added to the principal of the Amended Jones-Hart Note, which amount shall bear interest from that day forward.  Id. ¶ 3.  On December 31, 2008, the principal amount of the Amended Jones-Hart Note, including the accrued interest added to the principal during the moratorium of payments, was $40,108.96.  Defendant Jones-Hart CSF, Declaration of Susanna Louisa Jones-Hart ("Jones-Hart Decl.") ¶ 7.

The Amended Jones-Hart Note provides that Defendant Guerette's failure to pay any interest, principal, or any other

---

[3]/(...continued)
writing and not specifically prohibited by statute," but fails to acknowledge that Hawai'i has a statute that prohibits compounding interest.  See Supplemental Briefing of Defendant Jones-Hart ("Defendant Jones-Hart's Supp. Br.") at 5.

sum due under the Amended Jones-Hart Note or Mortgage constitutes an event of default.  Amended Jones-Hart Note ¶ 8.1.  The Amended Jones-Hart Note further provides that upon occurrence of an event of default, the entire balance of principal, together with all accrued interest thereon shall, at the option of Defendant Jones-Hart, without demand or notice, immediately become due and payable.  Id. ¶ 9.1.  In addition, the entire balance of principal, together with all accrued interest, shall bear interest at the rate of eighteen percent (18%) per annum,[4/]

---

[4/] Hawaiʻi usury law (H.R.S. Chapter 478) provides that the interest rate limit for consumer credit transactions and home business loans in the State of Hawaii is twelve percent (12%).  See H.R.S. § 478-4(a).  In this case, the default interest rate is greater than 12%.  See id. § 478-8.  In her supplemental briefing, Defendant Jones-Hart asserts that the eighteen percent (18%) default rate, together with the late fees, do not violate Hawaiʻi usury law because "it is only triggered by an Event of Default, which Guerette could avoid by making the payments provided for in the [Jones-Hart] Amended Note."  Defendant Jones-Hart's Supp. Br. at 6 (citing to the Restatement (First) of Contracts § 536 (2010) and 9 Williston on Contracts § 20:33 (2010)).  In other words, Defendant Jones-Hart argues that the default rate of eighteen percent (18%) should not be considered usurious because it was triggered by a voluntary act by the borrower.  The majority of jurisdictions, including California, have adopted this approach.  See Southwest Concrete Products v. Gosh Construction Corp., 51 Cal.3d 701, 798 P.2d 1247 (1990) (the California Supreme Court explained that "a debtor cannot bring his creditor to the penalties of the Usury Law by his voluntary default in respect to the obligation involved where no violation of the law is present at the inception of the contract"); see also United American Life Insurance Co. v. Willey, 21 Utah 2d 279, 444 P.2d 755 (1968) (the Utah Supreme Court explained that "if the borrower pursuant to his promise can discharge the loan by paying only the amount borrowed together with interest totaling no more than [the legal rate], the contract is not usurious"); Dopp v. Yari, 927 F.Supp. 814, 822 (D.N.J. 1996)
                                                    (continued...)

compounded annually, as long as the event of default continues. Id. ¶ 9.2.[5/]  The Amended Jones-Hart Note states that Defendant Guerette shall also pay all of Defendant Jones-Hart's reasonable expenses, including attorney's fees and costs arising out of the enforcement or protection of her rights under the Amended Jones-Hart Note and Mortgage.  Id. ¶ 11.

---

[4/](...continued)
(explaining that the rule adopted by the majority of jurisdictions, which includes New York and California, "permits collection of interest rates in excess of the legal rate when the collection of the entire interest is at risk and depends upon a contingency and provided that the parties contracted in good faith without the intent to evade the usury laws").  As such, the Court is inclined to agree with Defendant Jones-Hart that the eighteen percent (18%) default rate does not violate Hawai'i usury law.  The Court expresses no opinion, however, as to whether any default interest rate in excess of eighteen percent (18%) would be permissible.

[5/] As noted above, compounding interest rates in consumer credit transitions are usually prohibited under Hawai'i law. Even when compound interest is allowed in default situations, it has been limited to the legal rate of interest.  In re Anderson, 69 B.R. 105, 109 n.2 (9th Cir. BAP 1986) (citing In re Chinese American Bank, 36 Haw. 571, 598 (1943)); see also Liberty Mut. Ins. Co. v. Year Round Pool, Inc., No. 96-1019, 1996 WL 741119, *4 (4th Cir. Dec. 30 1996) (noting that some jurisdictions have held that interest may be collected on overdue interest, which resembles compound interest).  As discussed supra, in her supplemental briefing, Defendant Jones-Hart fails to acknowledge that Hawai'i has a statute that prohibits compound interest. Upon review of the authorities, the Court is of the opinion that Defendant Jones-Hart is only entitled to simple interest at a rate beginning at seven percent (7%) annually, and increasing to eighteen percent (18%) upon Defendant Guerette's default.  The Court need not decide this issue at this time, however, as the calculation of interest will be made at the hearing confirming the sale of the property.

As of January 31, 2009, Defendant Guerette failed to make a scheduled payment as prescribed in the Amended Jones-Hart Note.  See Jones-Hart Decl. ¶ 8.  Pursuant to the terms of the Amended Jones-Hart Note, failure to make a scheduled payment constitutes an event of default.  Defendant Jones-Hart CSF Ex. D ¶ 8.1, 9.1.  According to Defendant Jones-Hart, as of July 30, 2010, Defendant Guerette has not made a single payment under the Amended Jones-Hart Note and remains in default under the Amended Jones-Hart Note and Mortgage.  See Jones-Hart Decl. ¶ 10; see also Defendant Jones-Hart's Supp. Br. at 7.  Thus, as of July 30, 2010, the principal amount due and owing on the Amended Jones-Hart Note and Mortgage is $40,108.96.  See Defendant Jones-Hart's Supp. Br., Ex. A (loan ledger).[6]  Although the loan ledger calculates interest compounding annually, the Court estimates that Defendant Jones-Hart is entitled to $10,829.42 in simple interest, calculated through August 31, 2010.  The late fees will likely be similar to Defendant Jones-Hart's current estimation of $7,564.84.  See id.  The Court need not determine the exact

---

[6] The principal Defendant Jones-Hart asserts she is owed includes interest compounded on the principal, and thus is greater than $40,108.96.  Although the Court has expressed its opinion as to whether compounding interest is permissible in this case, the Court has reserved the question of the exact amount of interest owed for the hearing confirming the sale of the property.  Should Defendant Jones-Hart seek to argue that compounding interest is permissible in this instance, having been made aware of the applicable statute, she may make such an argument at said hearing.

amount of interest and other charges owed at this point, as these issues will be addressed at the hearing confirming the sale of the property.

## PROCEDURAL BACKGROUND

On March 30, 2009, the United States of America ("Plaintiff" or "Government"), filed a civil complaint against Defendant Guerette, and co-defendants Jones-Hart, House of Finance, Inc., State of Hawaii, City and County of Honolulu, and Central Pacific Bank ("Complaint").  The Complaint alleges that Defendant Guerette defaulted on his obligations to the Government under the Note and Mortgage executed on August 20, 1986, and the Mortgage Modification Agreement executed in favor of the Government on May 12, 1997.  Compl. ¶¶ 4-9.  Defendant's principal obligation was originally $135,000.00.  Id. ¶ 4.

On May 26, 2009, the Clerk of the Court entered default against Defendant Guerette.  On June 12, 2009, Defendant Guerette filed in this Court a letter he sent to Assistant United States Attorney Edric Ching explaining, inter alia, why he has not been able to make the required mortgage payments.  See Docket no. 13. On September 21, 2009, Defendant Guerette made an appearance at the Rule 16 Scheduling Conference.  Subsequently, on February 19, 2010, Defendant Guerette wrote a letter to Magistrate Judge Kevin S.C. Chang explaining why he has not been able to make the required mortgage payments.  See Docket no. 31

11

On July 21, 2009, counsel for Defendant Jones-Hart filed a Notice of Appearance along with an answer to the Complaint.  Also on this date, Defendant Jones-Hart filed a cross-claim against Defendant Guerette ("Jones-Hart Cross-Claim").  In the Cross-Claim, Defendant Jones-Hart exercises her option under the terms of the Amended Jones-Hart Note to declare the full amount of principal and interest owed by Defendant Guerette immediately due and payable.  See Jones-Hart Cross-Claim ¶ 12.  The Cross-Claim also requests that judgment be entered in favor of Jones-Hart and against Guerette for all amounts due and owing under the Amended Jones-Hart Note and Mortgage.  Id. ¶¶ 2, 3.

All other named defendants were either defaulted or dismissed from this action.  On April 15, 2009, a notice of dismissal without prejudice was filed as to Defendants State of Hawaii and City and County of Honolulu.  On August 27, 2009, an entry of default was entered by the Clerk of the Court against Defendant House of Finance, Inc.  On September 9, 2009, a notice of dismissal without prejudice as to Defendant Central Pacific Bank was filed.[7]

---

[7] According to the notice of dismissal, on September 4, 2009, Central Pacific Bank recorded a release of mortgage in the Land Court as Document No. 3895248 indicating that the November 15, 1978, mortgage has been satisfied.

On February 26, 2010, Plaintiff filed a Motion for Summary Judgment, Interlocutory Decree of Foreclosure, and Deficiency Judgment ("Plaintiff's MSJ").  Plaintiff's motion was accompanied by a memorandum in support and a concise statement of material facts.

On April 26, 2010, Defendant Jones-Hart filed a statement of position ("Jones-Hart Statement of Position"). Jones-Hart's Statement of Position was accompanied by a concise statement of material facts.

On April 30, 2010, Defendant Guerette, acting pro se, filed an opposition to Plaintiff's MSJ.[8/]  Defendant Guerette's opposition was written in letter form and explains, <u>inter alia</u>, why he has not been able to make the required mortgage payments.

On May 3, 2010, Plaintiff filed a reply to Defendant Guerette's opposition ("Plaintiff's Reply").

On May 13, 2010, Plaintiff's counsel filed a supplemental declaration to include a Litigation Guarantee completed by Island Title Corporation ("Title Search").

---

[8/] The Court observes that Defendant Guerette's opposition was untimely filed.  <u>See</u> Local Rule 7.4 ("An opposition to a motion set for hearing shall be served and filed not less than twenty-one (21) days prior to the date of hearing.").  The Court, however, declines to strike Defendant Guerette's opposition because he is acting pro se and the Court finds that Plaintiff and Defendant Jones-Hart have not been prejudiced by his late filing.

The following day, on May 14, 2010, Plaintiff's counsel filed a second supplemental declaration which confirmed that Defendant Guerette is not an active service member.

The Court was originally scheduled to hold a hearing on May 18, 2010, but on May 17, 2010, one day prior to the hearing, Defendant Guerette filed a request for a continuance. Plaintiff did not oppose. In addition, Defendant Jones-Hart was not opposed so long as it was the last continuance in this matter. As a result, the Court granted Defendant Guerette's request for a continuance, but advised Defendant Guerette that any further requests for a continuance of this matter would be denied.

On July 23, 2010, Plaintiff again requested a continuance. His request was similar to his previous request, indicating that he desired additional time to acquire a loan. The Court denied this request by minute order, indicating that the Court would consider whether there should be any delay in the foreclosure sale at the hearing. See Docket no. 49.

On July 26, 2010, the morning of the scheduled hearing, Defendant Guerette filed an additional request for a continuance. The Court heard arguments on Plaintiff's request for a continuance at the hearing, and orally denied Plaintiff's request. See 7/26/10 Tr. 3:25 (rough draft of transcript) ("Tr.").

14

At the hearing, the Court requested supplemental briefing on various issues.  On July 30, 2010, Plaintiff filed supplemental briefing, which confirmed that Defendant Guerette remains in default and calculated interest through August 31, 2010.  On the same day, Defendant Jones-Hart filed supplemental briefing, which addressed the issues of usury and compound interest, and calculated interest on the Amended Jones-Hart Note and Mortgage through August 31, 2010.  Defendant Guerette did not file supplemental briefing.

Also on July 30, 2010, the Court received a letter from the Government providing the names of three potential commissioners to oversee the sale of the subject property, which was sent to Defendants Jones-Hart and Guerette as well.  Neither Defendant has objected to, or commented on, the Government's list of proposed commissioners.

## **LEGAL STANDARD**

### I.  **Summary Judgment**

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc. ("Liberty Lobby"), 477 U.S. 242, 248 (1986)) (citation omitted).[9/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller, 454 F.3d at 987.  The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.[10/]

---

[9/] Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

[10/] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  Miller, 454 F.3d at 987.  When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court
(continued...)

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See id. at 323; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[11/] The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630-31.[12/]  Accordingly, if

[10/](...continued)
an absence of evidence from the nonmoving party.  Id.

[11/] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

[12/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. (continued...)

17

"reasonable minds could differ as to the import of the evidence,"
summary judgment will be denied.  <u>Anderson</u>, 477 U.S. at 250-51.

<u>**DISCUSSION**</u>

In general, there is no federal foreclosure law;
rather, state law serves as the law of decision in foreclosure
actions.  <u>See</u> <u>Whitehead v. Derwinski</u>, 904 F.2d 1362, 1371 (9th
Cir. 1990), <u>overruled on other grounds by</u> <u>Carter v. Derwinski</u>,
987 F.2d 611 (9th Cir. 1993); <u>see also</u> <u>In Re Morris</u>, 204 B.R.
783, 785 (Bankr. N.D. Ala. 1996) ("There is no federal
foreclosure law.").

I.      **The Government's Motion for Summary Judgment, Decree of
        Foreclosure, and Deficiency Judgment**

Under Hawai'i law, a mortgage foreclosure decree is
only appropriate if four material facts have been established:
(1) the existence of a promissory note, mortgage, or other debt
agreement; (2) the terms of the promissory note, mortgage, or
other debt agreement; (3) default by the borrower under the terms
of the promissory note, mortgage, or other debt agreement; and
(4) the giving of the cancellation notice and recordation of an
affidavit to such effect.  <u>See</u> <u>IndyMac Bank v. Miguel</u>, 117
Hawai'i 506, 184 P.3d 821, 835 (Ct. App. 2008) (citing <u>Bank of
Honolulu, N.A. v. Anderson ("Anderson")</u>, 3 Haw. App. 545, 550,
654 P.2d 1370, 1375 (Ct. App. 1982)).  Further, to be entitled to

---

[12]/(...continued)
1994).

a decree of foreclosure, the Government is required to prove the defendant borrower's default, but need not show the exact amount owed until after the confirmation of the foreclosure sale. Anderson, 3 Haw. App. at 550, 654 P.2d at 1375.

In opposition, Defendant Guerette requests that the Court not enter a decree of foreclosure because he is "still working towards getting a loan against the house to pay off all outstanding payments and make payments while in college." Defendant Guerette's Opp'n at 1. He explains that he has had difficultly "thinking clearly" due to antibiotics that must be taken as a result of dental problems. Id. Further, he notes that he is presently attending college for a bachelor's degree in science and a secondary school teaching certificate. Id. Defendant Guerette also states that other issues make it difficult for him to get things accomplished, including fireworks being set off near his residence at early hours in the morning, extreme pain in his ankle, depression, lack of a personal vehicle for transportation, increased blood sugar levels, a sleeping disorder, and dental problems. Id. at 2-5.

To "solve" his problems, Defendant Guerette states that he intends to borrow against his house. Id. at 5. He claims that there is "plenty of equity available to accomplish most of what [he] need[s]." Id. He states that the loan will also help him make two vehicles fully operational. Id. In sum, he

concludes that he "need[s] the house to maintain stability in [his] life." Id. at 6.

In his request for a continuance on July 23, 2010, Defendant Guerette explained that his dental problems persisted, but that he had "just obtained legal council [sic] at a reasonable rate." See Docket no. 48.  At the hearing, however, Defendant Guerette stated that he was unable to obtain legal counsel. Tr. 3:8-17.  In addition, in his request for a continuance on July 26, 2010, Defendant Guerette explained that the Navy Federal Credit Union had told him he may be able to acquire an additional loan.  See Docket no. 51.  At the hearing, the Court instructed Defendant Guerette that, if he was indeed able to get a loan from the Navy Federal Credit Union, he should do so as quickly as possible to pay off his debts prior to the sale of the subject property.  Tr. 8:8-10.

The Court sympathizes with Defendant Guerette's troubles as it appears he is going through a difficult time in his life.  However, as Defendant Guerette does not dispute the existence of the Government's Note and Mortgage or his default, Defendant Guerette's opposition does not address any of the material facts relevant to the instant motion for summary judgment.  See Plaintiff's Reply at 2 (requesting that the Court ignore Defendant Guerette's opposition because "[t]he statements made by Defendant Guerette in his Opposition to Summary Judgment

are irrelevant to the resolution of the subject motion"). Because Defendant does not dispute the pertinent facts underlying the action, this Court will review the evidence produced by the Government to determine if it is sufficient to establish that the Government is entitled to judgment as a matter of law.  Upon review, the Court finds that the Government has produced evidence of all four of the required factors, and therefore is entitled to judgment as a matter of law, a decree of foreclosure, and a deficiency judgment.[13/]

First, there is no dispute regarding the existence and terms of the Note, Mortgage, and Mortgage Modification Agreement. In its motion for summary judgment, Plaintiff has come forward with evidence that on or about August 20, 1986, Defendant Guerette executed the Note for $135,000.00.  Plaintiff's CSF Ex. A.  To provide further security on the Note, Defendant Guerette executed the Mortgage, which was recorded on August 22, 1986, in the Land Court.  Id., Ex. B.  On or about May 12, 1997, Defendant Guerette entered into a Mortgage Modification Agreement which was recorded on May 21, 1997, in the Land Court.  In opposition, Defendant Guerette does not dispute the existence or terms of

---

[13/] The Court observes that a deficiency judgment may not be necessary in this matter.  If, however, following the foreclosure sale of the Mortgaged Property it appears that the proceeds of such sale shall be insufficient to pay all the amounts owed Plaintiff and a deficiency exists, judgment shall be entered for such deficiency against Defendant Guerette and in favor of Plaintiff and Defendant Jones-Hart, as appropriate.

said agreements, but rather attempts to explain why he has been unable to comply with the terms of these agreements.  See Defendant Guerette's Opp'n at 1-6.  Accordingly, because there is no dispute as to the existence or terms of the Note, Mortgage, and Mortgage Modification Agreement, Plaintiff has satisfied the first two requirements.

Next, Plaintiff has come forward with evidence that Defendant Guerette is in default.  See 2/22/10 Luke Aff. ¶ 11 ("As of [February 22, 2010, Defendant] Guerette has remained in default."); see also 7/30/10 Luke Aff. ¶ 3 ("As of [July 30, 2010, Defendant] Guerette has remained in default.").  In a letter to Defendant Guerette dated November 20, 2008, Plaintiff informed Defendant Guerette of his delinquency totaling $7,150.99.  Id. ¶ 11, Plaintiff's MSJ CSF Ex. E.  Although the letter demanded that Defendant Guerette bring his account current, he has failed to do so.  Plaintiff's MSJ CSF Ex. E; 2/22/10 Luke Aff. ¶ 7.  Indeed, in both his opposition and at the hearing on this motion, Defendant Guerette did not dispute that he was in default.  See Defendant Guerette's Opp'n at 1-6; Tr. 6:6-23.  As a result, because there is no dispute as to whether Defendant Guerette is in default, Plaintiff has satisfied the third requirement.

Finally, the Government has shown that Defendant Guerette has been given a cancellation notice.  On November 20,

2008, Plaintiff sent a letter to Defendant Guerette that "demand[ed] the total amount due on [Defendant Guerette's] account to bring it current" and provided Defendant with two options in lieu of foreclosure.  Plaintiff's MSJ CSF, Ex. E.  An affidavit regarding the giving of this letter was also submitted with Plaintiff's MSJ.  See 2/22/10 Luke Aff. ¶ 7.  In opposition, Defendant Guerette does not deny receipt of this letter.  See Defendant Guerette's Opp'n 1-6.  Thus, the Court finds that Defendant Guerette has been given ample notice.  As such, because there is no dispute as to whether Defendant Guerette received notice of cancellation, Plaintiff has satisfied the fourth requirement.

Accordingly, as all four requirements have been met by the Government, and Defendant Guerette has failed to "set forth specific facts showing that there is a genuine issue" of material fact, the Court finds that summary judgment is appropriate.  See Liberty Lobby, 477 U.S. at 256.

As discussed supra, although the Court need not decide the amount of interest and other charges due and owing to Plaintiff at this stage of the proceedings, the Court observes as of July 30, 2010, the principal amount due and owing under the Note, Mortgage, and Mortgage Modification Agreement was $101,611.15 (together with interest thereupon to be determined at the hearing confirming the sale of the subject property).

7/30/10 Luke Aff. ¶ 2.  Prior to the foreclosure sale, should Defendant Guerette acquire a loan to pay off his debts, he shall be permitted to cure his default with Plaintiff to prevent the foreclosure sale, which would require Defendant Guerette to pay the entire principal amount owed, together with any lawful interest and administrative charges thereupon.  See In re Kealia Beach Village, Inc., 18 B.R. 133 (D. Haw. Bkr. 1982) (holding that under Hawai'i law, the sale of the property terminates the mortgagor's rights in the property); see also Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co., 89 Hawai'i 157, 164, 969 P.2d 1275, 1282 (1998).  The same is true of the Amended Jones-Hart Note and Mortgage, should Defendant Guerette acquire a loan to pay off his debts.

## II.        Jones-Hart's Interest

Defendant Jones-Hart requests that "any order entered by this Court, pursuant to Plaintiff's Motion for Summary Judgment, recognize her interest in the Property and the amounts owed as stated herein as a valid mortgage lien pursuant to the terms of the Amended [Jones-Hart] Note and Mortgage."  Jones-Hart Statement of Position at 7-8.

"It is well established that a decree of foreclosure in a mortgage foreclosure action extinguishes the liens of junior lienors who are parties to the action."  Theo. H. Davies & Co., Ltd. v. Long & Melone Escrow, Ltd., 876 F.Supp. 230, 234 (D. Haw.

24

1995); see Powers v. Ellis, 56 Haw. 587, 589, 545 P.2d 1173, 1174 (1976); H.R.S. § 667-3.[14/]  Mortgage creditors shall be entitled to payment according to the priority of their liens.  H.R.S. § 667-3.  "Junior lienors must plead their claims to any surplus remaining after satisfaction of the senior mortgage as cross-claims pursuant to Fed. R. Civ. P. 13."  Theo. H. Davies & Co., Ltd. v., 876 F.Supp. 234 (citing Powers, 56 Haw. at 588, 545 P.2d 1173).  "The [] court may then adjudicate the status of the junior liens during the proceeding to foreclose the senior mortgage or may reserve these issues for later determination."  Id.

Upon review of Defendant Jones-Hart's Statement of Position, the Court finds that she has a valid lien on the Mortgage Property.  However, as the Jones-Hart Mortgage was dated November 22, 1999, and recorded on December 30, 1999, any such mortgage lien is junior and subordinate to Plaintiff's mortgage

---

[14/] H.R.S. § 667-3 provides:

> Mortgage creditors shall be entitled to payment according to the priority of their liens, and not pro rata; and judgments of foreclosure shall operate to extinguish the liens of subsequent mortgages of the same property, without forcing prior mortgagees to their right of recovery.  The surplus after payment of the mortgage foreclosed, shall be applied pro tanto to the next junior mortgage, and so on to the payment, wholly or in part, of mortgages junior to the one assessed.

Haw. Rev. Stat. § 667-3.

lien.  Defendant Jones-Hart, as the sole junior lien holder who appeared in this action and filed a cross-claim, is entitled to first priority to any surplus after the Government has been paid in full.  See Theo. H. Davies & Co., Ltd. v, 876 F.Supp. at 234.[15/]

The amount of interest owed Defendant Jones-Hart shall not be decided at this time as the Court reserves the question of the exact amount (including interest) of the indebtedness secured by the liens held by the respective parties.  See Kamaole Resort Twenty-One v. Ficke Hawaiian Investments, Inc., 60 Haw. 413, 415, 591 P.2d 104, 106 (1979) (noting that the lower court entered a decree of foreclosure and order of sale while reserving the issue of the calculation of interest).  However, as discussed supra, the Court finds that as of July 30, 2010, the principal amount due and owing on the Amended Jones-Hart Note and Mortgage is at least $40,108.96.  See Defendant Jones-Hart's Supp. Br., Ex. A (loan ledger).  Further, following the foreclosure sale of the Mortgaged Property, if it appears that the proceeds of such sale shall be insufficient to pay all the amounts owed Defendant Jones-Hart and a deficiency exists, judgment shall be entered for

---

[15/] Upon review of the Title Search, the Court observes that House of Finances, Inc., executed a mortgage on the subject property in the amount of $12,000 on December 10, 2004. Defendant House of Finances, Inc. has not made an appearance in this action, however, and on August 27, 2009, an entry of default was entered by the Clerk of the Court against Defendant House of Finances, Inc.

such deficiency against Defendant Guerette and in favor of
Defendant Jones-Hart.

<u>**CONCLUSION**</u>

It is hereby ORDERED, ADJUDGED, and DECREED for the
reasons stated herein that:

1. That Plaintiff's Motion for Summary Judgment,
Interlocutory Decree of Foreclosure, and Deficiency Judgment
filed herein on February 26, 2010, is hereby GRANTED;

2. Defendant Guerette is in default under the terms of
the Note, Mortgage, and Mortgage Modification Agreement described
in the Complaint which are currently held by Plaintiff.  As of
July 30, 2010, the principal amount due and owing on the Note and
Mortgage was $101,611.15 (together with interest thereupon to be
determined at the hearing confirming the sale of the subject
property).  7/30/10 Luke Aff. ¶ 2.

3. The Court finds that Defendant Jones-Hart has a
valid lien on the Mortgage Property that is junior to Plaintiff's
interest in the Mortgaged Property.  As of July 30, 2010, the
principal amount due and owing on the Amended Jones-Hart Note and
Mortgage is at least $40,108.96 (together with interest thereupon
to be determined at the hearing confirming the sale of the
subject property).  See Jones-Hart ¶ 12.

4. The Government's Note, Mortgage, Mortgage
Modification Agreement described above and currently held by

27

Plaintiff shall be and are hereby foreclosed as prayed, and the property described in Exhibit B to Plaintiff's concise statement of facts shall be sold at public auction, without an upset price. Such sale of the Mortgaged Property shall not be final until approved and confirmed by the Court.  The Court hereby reserves the question of the exact amount (including interest) of the indebtedness secured by the liens held by the respective parties.

5. The Amended Jones-Hart Note and Mortgage described above and currently held by Defendant Jones-Hart shall be and are hereby foreclosed as prayed.

6. The Commissioner as appointed herein by the Court shall sell the property within four (4) months after the Commissioner is notified of this Order and Decree of Foreclosure. The Commissioner shall hold all proceeds of the sale of the property in an interest bearing account to the credit of this cause subject to the directions of this Court.  Upon payment according to such directions, the Commissioner shall file an accurate accounting of the Commissioner's receipts and expenses.

7. Lyle Hosoda, Esq., is hereby appointed by this Court as Commissioner, and as Commissioner shall henceforth sell the property at foreclosure sale to the highest bidder at the Commissioner's sale by public auction, without an upset price, after first giving notice of such sale by publication in at least one newspaper regularly issued and of general circulation in the

28

District of Hawai'i.  Said notice shall be published once a week for at least four (4) consecutive weeks, with the auction to take place no sooner than fourteen (14) days after the appearance of the fourth advertisement.  Said notice shall give the date, time, and place of the sale and an intelligible description of the property, including any improvements.  The Commissioner shall have further authority to continue sale from time to time at the Commissioner's discretion.  No bond shall be required of the Commissioner.  In the event that the Commissioner refuses, or becomes unable, to carry out his duties set forth herein, the Court shall appoint another without further notice of hearing.

8. The Commissioner shall sell the subject property by foreclosure sale in its "AS IS" condition, without any representations or warranties whatsoever as to title or possession.

9. The Commissioner and all persons occupying the subject property shall allow reasonable access to view the subject property, a minimum of two separate days prior to the sale of the subject property, by means of an open house or other reasonable means.

10. The fee of the Commissioner shall be such as the Court deems just and reasonable, together with actual and necessary expenses incurred with the sale of the subject property.

11. The order of distribution of the sale proceeds to the parties claiming an interest in the property shall be made in accordance with their respective priorities as determined by this Order.

12. The sale so made and confirmed shall perpetually bar Defendant Guerette and all persons and parties claiming by, through or under Defendant Guerette or his wife Hilaria Mataro Guerette, except governmental authorities enforcing liens for unpaid real property taxes, from any and all right, title and interest in the Property or any part thereof.

13. Plaintiff United States and all other parties are hereby authorized to purchase the Property at the foreclosure sale.  The successful bidder at the foreclosure sale shall be required at the time of such sale to make a down payment to the Commissioner in an amount not less than ten percent (10%) of the highest successful price bid, such payment to be in cash, certified check or cashier's check, provided that should Plaintiff United States or Defendant Jones-Hart be the high bidder, they may satisfy the down payment by way of offset up to the amount of their secured debts.  The balance of the purchase price must be paid in full at the closing of the sale, which shall take place 35 days after entry of the order confirming the sale.  If the bidder fails to fulfill this requirement, the deposit shall be forfeited and applied to cover the cost of sale,

including the Commissioner's fee, with any amount remaining to be returned to the bidder.  Such payment is to be in cash, certified check or cashier's check, provided that should Plaintiff United States or Defendant Jones-Hart be the high bidder at the confirmation of sale, they may satisfy the balance of the purchase price by way of offset up to the amount of their secured liens, as discussed above, as appropriate.  Costs of conveyancing, including preparation of the conveyance document, conveying tax, securing possession of such mortgage property, escrow services, and recording of such conveyance, shall be at the expense of such purchaser.

14. Pending the sale of the Mortgaged Property, Defendant Guerette shall take all reasonable steps necessary to preserve the real property (including all buildings, improvements, fixtures and appurtenances on the property) in its current condition.  He shall not commit waste against the property, nor shall he cause or permit anyone else to do so. Defendant Guerette shall not do anything that tends to reduce the value or marketability of the property, nor shall he cause or permit anyone else to do so.  Defendant Guerette shall not record any instruments, publish any notice, or take any other action (such as running newspaper advertisements or posting signs) that may directly or indirectly tend to adversely affect the value of the property or that may tend to deter or discourage potential

31

bidders from participating in the public auction, nor shall he cause or permit anyone else to do so.

15. All persons occupying the Mortgaged Property shall leave and vacate the property permanently within sixty (60) days of the date of this Decree, each taking with them their personal property (but leaving all improvements, buildings, and appurtenances to the property).  If any person fails or refuses to leave and vacate the Property by the time specified in this Decree, the Commissioner is authorized and directed to take all actions that are reasonably necessary to bring about the ejectment of those persons, including obtaining a judgment for possession and a writ of possession.  If any person fails or refuses to remove his or her personal property from the premises by the time specified herein, any personal property remaining on the property thereafter is deemed forfeited and abandoned, and the Commissioner is authorized to remove it and dispose of it in any manner the Commissioner sees fit, including sale, in which case the proceeds of the sale are to be applied first to the expenses of sale and the balance to be paid into the Court for further distribution.

16. When the sale of the Mortgaged Property is confirmed by this Court, the State of Hawaii, the Land Court, and the Bureau of Conveyances, shall permit the transfer of the property to be reflected upon register of the title.

32

17. The sale can be supplemented with the practices and procedures in the State of Hawaii and Section 667 of the Hawaii Revised Statutes.

18. The Court reserves jurisdiction to determine the party or parties to whom any surplus shall be awarded herein.

19. At the hearing on confirmation herein above mentioned, if it appears that the proceeds of such sale shall be insufficient to pay all the amounts which are valid lien claims against Defendant Guerette and a deficiency exists, judgment shall be entered for such deficiencies against Defendant Guerette and in favor of Plaintiff United States and Defendant Jones-Hart, as appropriate.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, August 13, 2010.

_Alan C. Kay_

Alan C. Kay
Sr. United States District Judge

United States v. Guerette, et. al., Cv. No. 09-00133 ACK-KSC:
Order Granting Plaintiff's Motion for Summary Judgment, Interlocutory Decree of Foreclosure, and Deficiency Judgment